

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MYRIAM PAINCHAULT,

                Plaintiff,

      -against-

TARGET CORPORATION,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

**09-CV-1831 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Myriam Painchault ("Painchault") brings this negligence claim against Defendant Target Corporation ("Target"). (Compl. (Docket Entry # 1 at 5).) Target removed the case, under 28 U.S.C. § 1441, from the New York Supreme Court, Queens County, to this court, on the basis of the court's diversity jurisdiction, under 28 U.S.C. § 1332. (Notice of Removal (Docket Entry # 1 at 1).)[1] Painchault alleges that she slipped on liquid in a Target store and was injured. (Compl. ¶¶ 3-8.) Target moves for summary judgment. (Docket Entry # 18.) For the reasons stated below, Target's motion is granted.

## I. BACKGROUND[2]

Painchault alleges that, on September 1, 2008, she entered a store owned and operated by Target in Queens, New York ("the store"). (Compl. ¶¶ 3-5.) As she walked

---

[1] Diversity jurisdiction is proper. Target states that it is a "foreign corporation whose principal place of business is outside of the State of New York." (Notice of Removal at 2.) Though Painchault does not refer to her address in her Complaint, she stated at her deposition that she had a New York State driver's license. (Painchault Dep. (Docket Entry # 18-6) at 17.) Target states that, "upon information and belief, the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." (Notice of Removal at 2.)

[2] Both parties completely ignored Local Civil Rule 56.1, which requires them to submit statements of undisputed facts. Though Rule 56.1(a) permits the court to deny a summary judgment motion where the movant has failed to submit such a statement, the court will not take this step, since it finds that the record is sufficient for it to reach a decision.

1

through the store, she "was caused to slip and fall on an accumulation of liquid on the floor." (Id. ¶ 6.) As a result, Painchault was "severely injured requiring medical and hospital expenses and underwent severe physical and emotional pain and suffering." (Id. ¶ 8.) These constitute all of the factual allegations stated in the Complaint.

Painchault testified, at her deposition, that on September 1, 2008, she went by herself to the store in order to make a purchase. (Painchault Dep. (Docket Entry # 18-6) at 16.) It had not rained that day. (Id. at 18.) As Painchault was walking down one of the store's aisles, "all of a sudden" she fell. (Id. at 18, 26-28.) Painchault felt a wet and clear substance on the floor which, she believed, had caused her to slip. (Id. at 28.) She stated that she had not seen this substance on the floor before she fell. (Id.) She also did not know how long it had been there. (Id. at 28-29.) Painchault did not see anyone in the vicinity at the time of her fall, and was not aware of any witnesses. (Id. at 27-28.) The fall caused injury, for which Painchault sought medical treatment. (Id. at 29-67.)

Target also submits the deposition of Yolanda Corlette ("Corlette"). (Corlette Dep. (Docket Entry # 18-7).) At the time of the accident, Corlette was employed as an "executive team leader" at the store, a job in which she supervised about fifty employees throughout the store. (Id. at 4-7.) Corlette was responsible for, among other things, supervising the employees who cleaned the floor and removed debris. (Id. at 7-8.) Corlette stated that all the employees at the store were trained to clean up a spill upon seeing it, and that there were "paper towel stations throughout the store." (Id. at 8.) In addition, about two employees were specifically assigned to the "maintenance crew" and were responsible for walking through the store with a cart full of supplies, including mops and paper towels, in order to keep the store clean. (Id. at 8-11.) According to Corlette, if any employee saw a

2

spill, he or she was required either to clean it after getting a paper towel, or to call the maintenance crew. (Id. at 13-14.) There were "spill stations," equipped with paper towels, located in each department of the store, every thirty feet or so. (Id. at 14-15.) If an employee found a spill and could not retrieve the necessary supplies to clean it up without leaving the area unsafe, he or she was required to stay at the scene, and summon another employee, who would bring the necessary supplies. (Id. at 15-17.)

On the day of the incident, Corlette was working; she first heard of the incident when someone (Corlette did not remember who) called her on her walkie-talkie. (Id. at 18.) Corlette went to the scene of the accident and saw Painchault on the floor, holding her knee. (Id. at 18-20, 27.) Corlette asked Painchault what happened, and she said she "fell on something." (Id. at 20.) Corlette observed a "clear liquid" in the area where Painchault said she had fallen. (Id. at 21.) No one identified him- or herself to Corlette as a witness to what had happened. (Id. at 22.) Corlette photographed the liquid, and stated that it was the only liquid she observed in the area. (Id. at 23-24, 35.) Before she took the photograph, she placed hangers around the liquid to show that "the amount of liquid was . . . small." (Id. at 24.) After speaking with Painchault, Corlette called an ambulance and filled out an incident report. (Id. at 25, 27.) Corlette said she did not know what the source of the liquid was. (Id. at 32.) Nor did she know how long it had been on the floor. (Id. at 34.)

Target submits a photograph, presumably the one taken by Corlette. (Docket Entry # 18-8.) From the photograph, the pool of liquid, while difficult to discern with any precision, appears to be less than six inches across. (Id.) Target also submits the incident report prepared by Corlette. (Docket Entry # 18-9.) The report states that Painchault "was walking on the main aisle" when "she slipped on a clear liquid that was on the floor[.

3

S]he fell on [her] left knee down to her toes." (Id. at 1.) The report describes weather conditions as "dry" and the liquid as "clear [and] colorless [] water." (Id.)

## II. LEGAL STANDARD

On a motion for summary judgment, the court may consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. 56(a). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

## III. DISCUSSION

### A. Applicable Law

Painchault asserts common-law negligence claims against Target. Because this is a diversity case, the court applies New York substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). "To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) (quoting Solomon ex rel. Solomon v. City of New York, 66

N.Y.2d 1026, 1027 (1985)). An alleged tortfeasor can only be liable for negligence if it owed a duty to the injured plaintiff. See Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136, 138 (2002). The existence and scope of a duty is generally a matter of law for the court to decide. Id. To establish breach of duty in a slip-and-fall case, a plaintiff must show that the "defendant created the condition which caused the accident or that the defendant had actual or constructive notice of the condition." Hartley v. Waldbaum, Inc., 69 A.D.3d 902, 903 (2d Dep't 2010).

Under New York law, a defendant moving for summary judgment must make a prima facie showing that it did *not* create the dangerous condition or that it had no actual or constructive notice. See Groninger v. Vill. of Mamaroneck, 17 N.Y.3d 125, 129 (2011); Rodriguez v. White Plains Pub. Sch., 35 A.D.3d 704, 705 (2d Dep't 2006); Armstrong v. Ogden Allied Facility Mgmt Corp., 281 A.D.2d 317, 318 (1st Dep't 2001). However, this burden-shifting standard does not apply here, since, under the federal standard, "'the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions.'" Tenay v. Culinary Teachers Ass'n of Hyde Park, 281 F. App'x 11, 12-13 (2d Cir. 2008) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)). Thus, a summary judgment motion must be granted

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Though "New York law applies a different standard for summary judgment in slip-and-fall cases[, t]he federal standard controls here because what burdens each party bears on summary judgment is a

5

procedural rather than substantive matter." DeAngelis v. American Airlines, Inc., No. 06-CV-1967 (NGG), 2010 WL 1292349, at *3 n.2 (E.D.N.Y. Mar. 31, 2010) (citation and internal quotation marks omitted); see also Tenay, 281 F. App'x at 12 (same).

Since, under New York law, Painchault would bear the burden at trial of showing that Target had actual or constructive notice of the condition that caused her fall, the court must grant summary judgment if "the record contains no evidence establishing a genuine issue of material fact with respect to causation, actual notice or constructive notice." Tenay, 281 F. App'x at 13.

### B.     Application of Law to Facts

The record contains no evidence that Target created the condition that caused Painchault to fall. The small puddle of liquid, apparently water, could have been caused by a customer, and nothing indicates that it was caused by a Target employee. According to their testimony, neither Painchault nor Corlette knew the source of the spill. There is also nothing in the record indicating that Target had actual notice of the puddle, i.e., that one of its employees saw or heard about it. Neither Painchault nor Corlette saw the spill prior to Painchault's fall. Corlette testified that Target employees were trained to immediately clean up spills upon noticing them. There is no evidence that a Target employee noticed the spill but failed to carry out that duty.

Finally, there is nothing in the record to indicate that Target had constructive notice. "'To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.'" Tenay, 281 F. App'x at 14 (quoting Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 838 (1986)). A defendant does not have

6

constructive notice when it merely has a "general awareness" that a dangerous condition may be present, id. (citing Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969 (1994)), and a jury should not be allowed to conclude, based on "mere speculation," that a condition was visible and apparent for a sufficient length of time to be discovered and remedied, Bluman v. Freeport Union Free Sch. Dist., 5 A.D.3d 341, 342 (2d Dep't 2004). Instead, the record must contain evidence of "either how the substance got there or how long it was there before the fall." Casiano v. Target Stores, No. 06-CV-6286 (NG), 2009 WL 3246836, at *3 (E.D.N.Y. Sept. 24, 2009). Even assuming that the spill was visible and apparent in the store's aisle, there is no evidence that it was present for any significant amount of time before Painchault slipped.

Since there is no genuine issue of material fact regarding Target's liability, its motion for summary judgment is granted. See Tenay, 281 F. App'x at 13-14 (affirming summary judgment grant where there was no evidence that defendant "created the wet floor condition that caused [plaintiff's] fall," no evidence the defendant had actual notice of the wet floor, and no evidence "that the wet area was visible or apparent, nor any evidence suggesting how long the condition had existed"); Robinson v. Wal-Mart Stores, Inc., No. 99-7436, 242 F.3d 367 (Table), 2000 WL 1811070, at *1-2 (2d Cir. Dec. 11, 2000) (same); Casierra, 2010 WL 2793778, at *2-3 (same); DeAngelis, 2010 WL 1292349, at *6 (same).

## IV. CONCLUSION

For the above reasons, Target's motion for summary judgment is GRANTED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 13, 2011

NICHOLAS G. GARAUFIS
United States District Judge

7